17-1063 Technology Properties Limited v. Canon Inc. Mr. Simon. Yes, Your Honor. May it please the Court. I'd like to first address the summary judgment order by the District Court. That's a de novo review. There are just a few points I'd like to make. The District Court described Canon's motion for summary judgment as seeking summary judgment on two reasons. One is that we were reading her claim construction too broadly, and two, the claim was invalid. The whole purpose of the invention is to allow a controller to communicate with different card types. We never contended that simply using MMC and SD cards in the same slot constitutes infringement. There also had to be a signing of signals based on the card type. By the processor, by the controller. By the controller. It controls the card. That's why it's called a controller. And what the District Court said was that the undisputed evidence, including the testimony of your own expert, said that your controller didn't do that, that the signing was done based on the specifications for the product. Well, with all due respect, the Court did not say the first part. She did not address our expert's contention. And our expert specifically said that when an SD card is inserted, it defaults to one bit, and the controller sends a signal and tells it to go to four bits, thereby assigning four lines to data. That's undisputed, and it's at 5258 of the appendix, paragraph 70, 5275, paragraph 99. What page? 5258, that's our expert's declaration. Dale Boschino. And he specifically says, at paragraph 70, I confirm that each representative... 5258? Yes, appendix 5258, paragraph 70. We don't have such a page. I'm sorry? We don't have that in our appendix. Oh, I'm sorry. It's not in the addendum, Your Honors. It's in the appendix. It's not in our appendix. You mean it's in the record, but not in the appendix. Not in the appendix. I don't know what happened there. I thought we had that in the appendix. I have an appendix page stamp with an appendix number here. Well, not the entire record is in the appendix. It's up to you to put the parts in the appendix that you're going to rely on. We didn't. You didn't, and we don't have it. Okay, well, Your Honor, I thought we did rely on it and put it in there, but there's also another page, 5275, 99. We don't go that high. The appendix stops at 1219. We have 5230, and then it jumps to 5833. And so the way it works is the briefs cite particular pages to the record, and those are the pages that go into the appendix. I understand, and that's what I thought we did, Your Honor. In any event, it's undisputed in this case that the product, the SD card, operates in 1-bit mode or 4-bit mode. That's in the district court's order. It can do either. The controller tells it to operate in either mode. Now, the second point, I agree with you, Your Honor. The district court said that what controls how the card operates is the SD specification. Well, what the controller is programmed to do, its whole purpose is to communicate with different types of cards. So as noted in the patent in Figures 4 and 5, one would look at the specifications for the different cards and program the controller to recognize the card and assign lines based on Figures 4 and 5 in the specification. Can I get some water, please? I'm sorry. I apologize. I thought that your expert agreed that the assignment was done by the specification. Well, our expert not only agreed with it, our expert in his declaration says the way the controller knows what lines to put and how to control an SD card is to look at the specification. That's in the patent. The controller has to be able to communicate with the cards. Every single card has a specification that tells you how to communicate with it. The specification is written and says, if you're going to use SD cards, here's what you need to do. Here are the commands that you use. And so the controller sends commands based on the specification to the card. I think the confusion… What is it that's controlling the so-called mapping of the pins? The controller or the specification? The controller. The controller controls it. The information in the controller, it comes from the specification. It basically says the SD organization said, here's how you communicate with our cards. The smart card organization said, here's how you communicate with our cards. That's what the controller does. That's in the patent specification. It says… Where is it in the specification? If you look at appendix 124, I have the 424 patent. I hope you have that. Just another? Appendix 124 is the 424 patent. Okay. In column 6, beginning at line 1, it speaks to the different… It's talking about figures 4 and 5. This is the 424 patent? Yes. And if you look at figures 4 and 5, they're charts, which on the left side gives you the pin number, and on the right side, I'm sorry, along the top, gives you the card type. And then within there, that's what a signing is. That's what the district… But where does it say that the controller is getting the information from the specification? Well, wonder where you're still in the art. It actually talks about the SD organization and who are members of it. Let me see where that is. I'm not finding that right now. I know that it mentions the SD organization. Well, I mean, it seems as though we've got two different views here. You say that if the controller just follows the directions from the specification and does the mapping based on that, that that's covered by the claims. Your opponents say, no, that's not true. If the specification tells you what to do, the fact that that's implemented by the controller doesn't count. Is that a fair statement of where we are? I think that's correct, Your Honor. And here's the distinction. The purpose of the patent was that instead of having a separate controller and separate slot for each type of card, you'd have one controller to control multiple cards and some of the pins at least would be shared. That's what Figures 4 and 5 show. A person implementing this invention has to get the information of how the different cards work. I mean, the fact that Figures 4 and 5 list all the different pinouts for the cards, that information came from the specifications of the cards. Doesn't the specification use the MCC and the SD cards interchangeably? The specification does not do that. In fact, the patent specification you're talking about. In fact, it says at column 2 that multimedia cards or secure digital cards, which have the same form factor but slightly different pinout. What line are you using? At line 3 and 4, 2 through 4, column 2 of the 424 patent. It specifically says they have different pinouts. What's more important is at the Markman hearing, the district court made a finding that MMC and SD cards are not the same type of card. If I can, I'd like to move to the attorney's fees issue. The district court based its attorney's fees exceptionalist finding on the weakness of our infringement claim. There were two bases given for that. The first was she said it lay claim to prior art. So she basically assessed our infringement claim on whether or not the claim covered prior art. Unfortunately, she didn't go through. I'm sorry. Go back to where you were reading in the pen. Yes, your honor. Show me there that the controller is making unique assignments based on the SD or the MC card. Well, first off in column 2, it specifically says they have slightly different pinout. It's undisputed in this case that one of our skill in the art would know that an SD card uses four bits. An MMC card can only use one. In their brief at page 10, they have a chart. That doesn't answer the question because the two different cards could share or use the different pin at different times. Show me in the specification where there's a unique assignment to the pins based on whether you got an SD card or an MC card. Your honor, that's not in the specification. In the prosecution history and in the court's Markman order, I can direct you to. Cannon argued at Markman that SD and MMC were the same type of card. She found that the intrinsic evidence makes it clear they're not the same type of card. There's no dispute about that. On page 10 of their brief, they have a chart with the pinouts. An MMC card only has seven pins. It can't have the same pinout as an SD card which has nine pins. It's impossible. Mortimer's skill in the art knows that. May I jump to the attorney's view? Your problem is that by your own admission, the directions of what to do are coming from the specification. It's not choices being made by the controller. It would seem as though the invention here was a controller which did something about the mapping that was unique, different from what the specification would require. That seems to me to be your problem here. Your honor, with all due respect, the controller has to implement the card specification. Sure, of course it does. The question is whether merely implementing the card specification is within the scope of the claims or whether the claims are limited to situations where the controller is making decisions about the mapping. The claims do require a decision to be made. That decision is what is the type of card that's been inserted. There's no dispute they do that. Their products say, do I have an SD card or MMC card? If I have an SD card, I'm going to implement the SD specifications for data lines. If I have an MMC card, in parallel. If I have an MMC card, I'm going to implement one data line. That's absolutely a decision made by the controller, and the controller changes based on the type of card inserted. In their products, if you put an MMC card and think it's an SD, it will not work. The controller has to make that decision. They admit that it does that. Their expert admits that it does that. It really wasn't a disputed issue in the case. I agree with you that the district court in Cannon said, well, the controller doesn't decide what data lines, the specification does. But that misunderstands the invention. The invention is there's lots of different types of cards, as shown in Figure 4 and 5, and you have a single controller that makes decisions once it knows the card type. In order to make that decision of what lines do what on the card type, it has to have that information. That's controlled by the card specifications. I understand what you're saying. You want to go on? Yes. I just want to make two quick points with respect to the exceptionalness. There's two reasons that the district court found that our infringement case was weak, which was the only basis for exceptionalness. One was we essentially lay claim to prior art, and the second was she didn't believe that we had a reasonable basis for thinking that her construction would change the ITC commission outcome. With all due respect, we, in the beginning of the case, because the commission just said with no explanation, if you use some data lines sometimes and not others, then that's not mapping. They didn't tell us what mapping was. Figures 4 and 5 show exactly that. It was inconsistent with the specification. We immediately, first thing in the district court, I personally said, Your Honor, could you construe mapping for us to decide this dispositive issue? They asked her in Markman after resisting that, can you find what the ITC said? This is not mapping. You're merely using some signal lines sometimes. She disagreed with that and said, and I'm quoting, she said it's not plain that using signal lines in some circumstances but not others is not mapping. At the hearing, she even said her understanding of assigning was taking a group of one thing on one side and assigning them to a group on the other side. So exactly what we argued. But here's the bigger point. Five defendants, all five defendants, including Cannon, in the case management statement, agreed that if the district court adopts our position on mapping, it is not dispositive. Cannon agreed and told the district court in writing, if you adopt assigning, which is my position, it's not dispositive. And yet somehow, six months later, I'm to be blamed because I should have known that that was dispositive when Cannon itself said it wouldn't be dispositive. I heard you say that you think that the district court judge's decision is based on two things alone. You don't think that there's other things in her decision that she relied on to find that this was an exceptional case? Do I understand that correctly? Correct, Your Honor, and I can point you to her order. I've read her order. I just see other things in there where she talks about, for example, the litigating position being significantly weaker than those of plaintiffs in other cases. It seemed to me as if there were multiple different reasons that were provided for why overall, in this particular district court judge's view, it was an exceptional case. Well, Your Honor, with all due respect, that point supports her weakness argument. She starts out and says there's two reasons. The only reason is that we had a weak infringement argument. She rejected that we litigated in a way to exacerbate the case. She said Cannon did that, not us. But she specifically says her only basis for finding is the substantial weakness of our case. She gives two reasons for that, and what you just quoted is her saying that our case is weaker than other cases we cited. But the basis for weakness in our case was that we lay claim to the prior art, which is not a test. You can't assess an infringement. I don't see her as having said that. Where does she say that? I have it, Your Honor, in her order. It's the appendix page. Here it is. It's her order. On page 8, appendix 18 and 17. If you look at 17, line 13, appendix 17, line 13, she says the merits of plaintiff's lawsuit were exceptionally weak for two primary reasons. First, plaintiff's infringement theory essentially lay claim to prior art. And then she explains. Okay. But she's doing that as an input for her claim construction, right?  This is the attorney's visa. I understand that, but she's saying that your claim construction is unreasonable because the effect of it would be to encompass the prior art, right? But that's the problem, Your Honor. In the Markman order, which is in the record, she agreed with our claim construction. Cannon said that's too broad. You should limit it. There's disclaimer. It would lay claim to prior art. She said no. She disagreed with that. Yet in the order for attorney's fees, for the first time, she finds you would think that would be in the claim construction order. I agree with you. But in the claim construction order, she adopted a construction that Cannon said wouldn't be dispositive. And then on page 18 of her order, she says, secondly, that the ITC decision in this case should have clearly indicated to plaintiffs the weakness of their claims. Where's the claim construction order? The claim construction order is, Markman order, is the appendix 9251. I hope that's in there. I apologize. You have an obligation to check your own appendix. You're the one who prepared it, right? You're correct. If you look at... Just hang on. We don't have that. I am so sorry. I know we cited to all that. My copy that I have has those pages. 9259. It's the Markman order. It's document number 334. And I could just read it. Hang on. You might have that. We might have that. We have that. Sorry about that. I'm sorry. This is my fault. We do have that. You're on page 9259. On line 19. She says, defendants further urge the court to specify that the use of some signal lines in some circumstances, but not others, based on fixed assignments, does not constitute mapping. Then she goes on on the next page, 9260, line 17. It is not plain from this discussion that mapping must mean varying the signal lines in some circumstances, but not others, does not constitute mapping. She specifically rejected the ITC's basis. And Cannon wanted her to do that. And I agree. If she would have adopted that construction and said your claim construction is too broad at Markman, the case would have been over. I would have stipulated to infringement. She didn't do that. And then after that, HP agreed that it wasn't dispositive and told that to explain lack of diligence. They then settled. The other defendants all settled. Why did they settle? It wasn't dispositive. They all admitted it wouldn't be dispositive. And yet, $1.8 million later, Cannon comes along and files a motion for summary judgment on that same basis. The very same basis that she rejected in Markman and she grants it. Okay. Well, we're out of time. We'll give you two minutes for rebuttal. Thank you, Your Honor. And again, I apologize. I should have confirmed that with the appendix. Mr. Mayor, Your Honor, is that how you pronounce that? Exactly, Your Honor. Excellent. Thank you very much. May it please the Court. Just to address the last point while it's fresh in our minds about the claim construction. Yes, Your Honor. What happened at the District Court Markman hearing was both sides argued for a certain type of assigning. They wanted logical assigning. We wanted physical assigning because we were arguing that the ITC got it right. What she actually said was, I'm going to construe it to mean assign. All these other arguments about the type of assigning, that goes to infringement. We'll address that later in the case. So when we got to summary judgment, we argued under your construction, Your Honor, Cannon's controllers do not assign. Then, therefore, we do not infringe, full stop. And she agreed with us. She said in the order, no assignment occurs. So this issue about what was said at the Markman hearing and what the judge did is really a sideshow. What matters here, what's before the Court, is whether she properly granted summary judgment of non-infringement and properly awarded the attorney's fees under the octane fitness standard. The only evidence... Doesn't this exchange that your opponent was pointing to, doesn't this show that there was merit, there was some strength in the litigation position that they were taking? Actually, Your Honor, we would submit that the outcome of the Markman, her claim construction, supports the award of fees because they even said in their blue brief that the claim construction was broader than what the ITC had held, and they still lost on summary judgment. Didn't even get to the trial. The judge found there was not enough evidence for a reasonable jury to find infringement. So actually we would submit the judge saying that it means to assign, and she still found summary judgment of non-infringement. Supports the award of fees. The only evidence that they point to in the record is the conclusory statements of their expert, Mr. Buscaino. And all his report says is that the cards transferred data in accordance with the card specifications. But mapping has to mean more than simply transferring data. The card specifications, and you can find the SD card specification at 6803 in the appendix. It lays out which signals go on which pins. The MMC specification does the same thing. To the extent there's any assigning in this case, it's done by these card standards. And all these cards have to comply with the card standards. In fact, the Canon controllers are incapable of changing that. They cannot make a decision that today I'm going to put the clock signal on line 7. They can't do that. All they can do is follow the card standards as dictated to them. I guess my question is where in the specification does it describe what you that is the controller making a decision that's not dictated by the specification? Where does it say that? First of all, Your Honor, mapping doesn't appear anywhere in the patents and suit. That was introduced during prosecution. So you're not going to find a definition of mapping in the patents. Okay. What about the prosecution history? The prosecution history, the only thing that happened was there was a reference, Hung Ju, which was described in the briefs, which has a slot for several different types of cards. But it has one set of pins for SD and MMC. They argued to the patent office, Hung Ju does not disclose mapping. They amended the claim to change it to require mapping as it is in the issued patent. And they said Hung Ju does not require mapping. It doesn't disclose mapping. So my friend pointed to figure 4 and 5. Where did they say that? Could you show us in the prosecution history where they said that? Yes. So it's at appendix 13234 to 239, Your Honor. It's also on page 6 of the red brief. We reproduce the amendment and the arguments there for the court. My friend pointed to figure 4 and 5 to say this is a disclosure. Hold on, hold on. I've got 13234. Where do they explain that the controller is making a decision independent of the specification? That statement is not anywhere in the prosecution history. The mapping does not appear in the patents. The mapping does not appear in the file history other than they added the word in and said Hung Ju doesn't disclose it. But what they did say, and Judge Wilkin pointed this out in her primary judgment order, is that figures 4 and 5 is a disclosure of mapping. And my friend said to this court a few minutes ago, figures 4 and 5 shows mapping because the controller has to decide what signals go on what lines. But if you look at figures 4 and 5, MMC and SD is in a single combined column. So to the extent that there's any mapping described in these patents and what that means, it can't be the difference between MMC and SD because the patents themselves refer to those two cards as the same thing. In fact, as Judge Wilkin pointed out in the summary judgment order, those cards are mentioned 22 times and every single time it's SD slash MMC or MMC slash SD. So to the extent mapping means anything, it can't be the difference between transferring data on four lines for an SD card and transferring data on one line for an MMC card. First of all, that's required by the card standards. The controllers in the Canon products have no say in that. They only implement what the standard requires of them, and they can't change it. So the controllers are not doing any mapping. With respect to the cards that- What did Hung Ju do? Hung Ju had a slot with pins for different types of cards, which was the prevailing type of product at the time when the patent was filed. What these patents claim to have invented is one slot that you can put every single kind of card in, and you have either 18 or 21 pins, depending on whether it's figure four or five. You have one slot where every single type of card goes in. They all use the same pins. Did Hung Ju accommodate both the SD and the MMC cards? Yes, Your Honor, it did, and it had one set of pins, just like the Canon products accused of infringement, had one shared set of pins for SD and MMC because the SD card was designed as a follow-on to the MMC card. The MMC card only had one data pin, so if you had a large digital picture, it took a long time for that to transfer to your computer on a single pin. So the whole point of SD was to have parallel data transfer of four pins. But that distinction between four-bit transfer and serial and parallel has no bearing on infringement here because it's all data. It's the same kind of data. It's going on the same lines, whether it's an SD or MMC card. And Canon's controller has no say in which signals go on to which lines. So there's no mapping here. The controllers do not perform any mapping as required by the claims. And all the asserted claims require mapping based on the type of card inserted. The Canon controllers do not do any mapping, as Judge Wilkin correctly found. And she had warned them in the Markman order that if Canon's products operate like Hang Ju, which is the art that they distinguished and said is not mapping, then you likely have no infringement here. She said that in the Markman order, and that's what came to fruition in the summary judgment order. We explained to her, and their expert actually agrees. We all agree our products operate according to the card standards. They have to. But that does not constitute mapping as these patents contemplate because the controller is not deciding which signals go on which lines. It can't. It's told which signals to put on which lines. It cannot decide or assign those based on the type of card. I wanted to point the court to Appendix 6803, which is the SD memory card specification. It actually shows which signals go on which lines. All of this is done and set in the Canon products before the controller is even powered on for the first time. So there's no way that the controllers can be found, and there's no evidence in the record that the Canon controllers actually do any mapping or have any control or say over which signals go on which lines. They do mapping, but it's mapping that's the result of an instruction from the specification, the card specification. The court's construction of mapping, Your Honor, was to assign. So our argument to Judge Wilkin was the assignment, to the extent it occurs, is being done by the card standards because they say which pin has to have which signal. I mean, that's the question, whether that comes within the claims or not. Right, and so our view, Your Honor, is that the controllers, our controllers can't vary that. In fact, they have no say in it. They're just there passively transferring data on the assignments that were already set by the card standards. So Judge Wilkin correctly found that there's no mapping based on what the controllers are doing, and there's no evidence in the record on which a reasonable jury could find there is mapping. The only thing that they pointed to is their expert report that they attached to their summary judgment opposition. And all that Mr. Ruscano said was the controllers, the Canon products, operate in accordance with the card specifications. The SD cards have four bits of data, and the MMC cards have one bit of data. And then he says, and therefore that's mapping. It's just a conclusion. There's no actual evidence, and she found this. There's no evidence on which a reasonable jury could rely to find that the controllers perform mapping. I asked your opponent as to where in the specification we could find that the controller assigned uniquely on the basis of whether you have an SD card or an MMC card, and he directed me to column two at the very top there. Do you read that in the same manner as your opponent? All that says, Your Honor, in fact, the reason that my friend pointed to that point, that's the only place in the entire record that MMC and SD are referred to without the slash between them. All that says is that they actually have the same form factor but a slightly different pinout. That's what I was getting at. SD was designed intentionally. That slightly different pinout, is that going to cause a controller to make a unique assignment? The controller doesn't make any assignment. The card specifications. Well, the controller does make the assignment. It's just doing what it's told by the specification, right? Well, it's not an assignment, Your Honor. It's just passively. It's transmitting data is what it is. It's data transfer. But in terms of which pin has which signal, the controller has no say over that. It's just sending data down the lines that the spec card standards require. And on page 10 of the red brief, my friend pointed out we have a table showing you that on pins 2, 3, 4, 5, 6, and 7, the signals are the same as between MMC and SD cards. That was intentional by the SD card designers. They wanted SD cards to be the same as MMC so that you would have the ability to have retroactive use. So the language, but a slightly different pinout, does that alter which pins are used depending on which card is inserted? It does not, Your Honor. And I'll point again to the red brief at page 10. The only difference is pin 1 for an SD card is data. Pin 1 of an MMC card is reserved for future use, so it's not used. Pins 8 and 9 for SD cards are data. Those pins don't exist in an MMC. That's the only difference. Every other pin that's common between the two has the same type of signal for an SD or an MMC card. So there's no mapping or assigning even going on. Talking about the patent specification having no mapping or assigning. Do I understand you correctly? The patent does not use the word mapping at all. So the only thing that my friend has pointed to is figures 4 and 5, saying that that shows you, as between these different types of cards, what the controller is doing. The issue is these pinouts that are in figures 4 and 5, they're not the same as the card standards. So if you were to look at the card standard for smart media, for example, ground is not going to be pin 1. So the inventors said, let's use one slot, one set of 18 or 21 pins for every single type of card that's in existence, and they listed them here. And then they said, we're going to assign different signals to different types of pins. But the controller, even if it was operating in accordance with this, the controller is going to be passively sending signals down the lines. But the key point, and Judge Wilkin pointed out in her order, MMC and SD is in a single column in both figures 4 and 5. So even the inventors of these patents didn't contemplate, as between MMC and SD, that there's any mapping. And what happened is... Do we know about how this device works when we're talking about cards other than SD and MMC? Do the specifications in those instances also direct the controller as to what to do? All of these cards have specifications just like SD and MMC. But the patent does not... These pinouts in the patents, figures 4 and 5, do not match the specifications for those cards. The inventors changed those around for those types of cards. But for MMC and SD, it's treated as a single type of card. So with respect to other cards, there's a choice being made by the controller that's not dictated by the specification? Yes, because the mappings in figures 4 and 5 are not the same as the card specifications. So the controller is sending signals down in accordance with figures 4 and 5, whereas for an SD and MMC card in the accused Canon products, the controller is making no decision about anything. It's just passively sending the signals down the lines that were set up, set forth by the card standards before Canon even made one of these products. Those things are fixed in stone before the Canon products are even powered on for the first time. So there are instances where the controller engages in mapping. Is that what you just told us? With respect to the accused products? Yes. There are instances with respect to the different cards, and there's other cards that I'll look at that are used here in figure 4, where the controller engages in what we're calling now mapping. With respect to the other types of cards that are listed in the figures, the patent talks about the controller varying the signal. So, for example, if you look at pin 3 in figure 5, it's ready for XD, it's MCMD for MMC SD, and so on. So there are different types of signals on that same pin for all these other kinds of cards. But for MMC and SD, they're the same. They're in a single column. So the controller is not varying anything with respect to those two cards at all, as shown in the figure on page 10 of the red brief. The signals are all the same. What I'm still unclear about is whether, with respect to the other cards, the specification is what dictates the assignment of the pins, or whether the controller is making some choices that are not dictated by the specification. With respect to the cards other than MMC and SD, Your Honor, the specifications are not dictating which signals are on which pins, because figures 4 and 5 don't match the card specifications. They change those pins' assignments up in figures 4 and 5. But they did not do that for SD and MMC. Those are treated as a single type of card in the patent. So to the extent there's any mapping at all here, it would have to occur with respect to cards other than SD and MMC, because as between—this is what the ITC found— as between an SD and MMC card, no mapping is required, because those cards are the same. The shape is the same. The pins are the same. The signals that go out are the same. The only difference is SD has four lines for data. MMC has one line for data. And the ITC and Judge Wilkin both found that that arrangement, which is the only arrangement accused of infringement here, is not mapping. So with respect to the other cards, what controls the mapping there? Is it the controller or the specification? The card specification doesn't control anything with respect to these other kinds of cards, because these assignments of pins— I guess what I'm driving at is there is mapping involved with respect to the other type of cards. Yes. But not with respect to SD and MMC, because they are the same. You can make a plausible argument, perhaps, that if you're doing it with respect to the specification, it has the capacity to conduct the mapping for other cards. I could see a plausible argument being made so. It does with the SD card and the MMC card. With respect to the SD and MMC? I'm talking about the exceptionality of the case and the argument. Okay. Right. What happened with respect to the fees, and I know I'm over my time, but I'll address your question, Judge Ranian. Judge Wilkin found that the ITC decision, which was affirmed by the full commission, that was not appealed. The appellants here chose not to appeal to this court the ITC's determination that there's no mapping. Instead, they restarted the district court case, and Judge Wilkin found in that decision, along with her warning in the Markman order, that if the accused products operate the same as Hangzhou, which means the type of arrangement that they disclaimed during the file history, then there's no infringement. They were warned then, and they still proceeded with the case and opposed our summary judgment. They didn't concede non-infringement and come to this court. They opposed it. Judge Wilkin found the case was exceptional from the start and that the fees incurred by Canon to defend it were reasonable and within the realm of what was necessary to defend against a case that they had no choice but to respond to. All right, we're out of time. Thank you. Thank you, Your Honor. Mr. Simon, you've got two minutes. Yes, I'd like to make two quick points. First, this point about this warning that if, think about this, if their products operate like prior art, there's no infringement. That's not the test for infringement, and it's undisputed. No, but what they disclaimed in terms of the prior art is relevant to the claim construction. I agree with you, Your Honor. If she found disclaimer, they argued disclaimer, and the district court addressed it and said there's no disclaimer. Well, it's not a question of disclaimer. It's a question of how you construe mapping. And she construed mapping. They wanted her to construe it in a way that said, if we're like Hung View, it doesn't count. And she didn't do that. She specifically said no. What's the difference between Hung View and what Canon does? This is undisputed. Footnote 5 of our opening brief, Hung View has 8 pins in the SDMMC slot. It's undisputed, and we cite the evidence in our opening brief in footnote 5 that you can't do 4-bit parallel transfer with 8 pins. You need 9 for SD cards. Their product isn't like Hung View. They have 9 pins, and they do parallel transfer. The specification he cited to you that's in the record, appendix 6813, specifically says the default bus after power-up is 1-bit bus in SD cards. Our expert didn't just come to conclusions. He tested these products, and he confirmed that their products changed from 1-bit bus to 4-bit bus. That was not addressed by their expert. It wasn't addressed by the court. There's no question about that. If they were like Hung View, we wouldn't be here. That's why we didn't appeal. In the ITC, some of the defendants said, you know what, we're not going to use MMC anymore. We're going to change our products. You can only read SD. We couldn't get an injunction. Is it correct with respect to the other cards other than the SD and MMC cards that the controller is making the decision as to which lines to assign and is not being directed to do that by the specification? No, that's not correct, and it's not in the record. Not correct? No. Well, let me make sure I'm understanding. The controller, with respect to all the cards, makes the decision based on the card specifications. But with respect to the other cards, it's not doing just what is directed by the specification. It's making a choice. No, it is doing just what's directed by the specification. Is that in the record? Well, I don't think it's in the record because that wasn't a question that Is it your view that what's depicted in Figure 5 is the same as the specifications for MMC and SD cards? For MMC and SD, yes, it is. Do you think the pins are the exact same as what's in the specifications? Well, with the exception of there is a different pinout. What do you mean by there is a different pinout? Well, MMC only uses one bit. It specifically does. I'm just asking if, as depicted in Figure 5, you have a column that says MMC-SD. Yes. I'm asking if the pins that are listed there is the same as if I were to look at the specifications for MMC and SD, would I see that the same pins are used for the same thing? I believe so, Your Honor. I haven't compared them. I know that we don't dispute the chart on page 10 of their brief for SD and MMC, and I think that tracks with what's in the patent. And I do need to address this. He specifically said the district court found, in her summary judgment, that MMC and SD are the same and treated the same. That's another area where, in the Markman order, she specifically found at page appendix 925. Why are they listed in the same column, then, in that chart? Because they can have all the other pins are the same, except one has seven pins, one has nine pins. And what I want to direct you to is they made that argument in Markman, and the district court cites the intrinsic evidence, because it's not just the patent, but there's amendments and back and forth, and she cites them in her Markman order, and she specifically says, I'm sorry, this is on page, this is for type of card, okay? So she found, in her Markman order, a crux of the case is going to be whether MMC and SD are the same type of card, because if they are, you don't need an adapter. She says that at the Markman transcript. She goes on appendix page 9279 and says, the court rejects defendant's proposal that MMC and SD are the same. The intrinsic evidence does not support such a conclusion that the applicant clearly limited the term to mean MMC and SD cards are a single type of card. Instead, and she goes through and talks about figure one, figure one of the patent, shows them as separate cards. She talks about our brief, where we talk about the prosecution history, where specifically the applicant tells the patent office, well, SD and MMC aren't the same because of this four-pin, one-pin issue. Okay, I think we're out of time. Thank you very much, and again, I apologize for the appendix. If there's something I can do to fix that, please, I'm happy to.